UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION -- LEXINGTON

| | |
|---|---|
| **UNITED STATES of AMERICA,**<br>**Plaintiff,**<br><br>V.<br><br>**JOSEPH SLONE,**<br>**Defendant.** | CASE NO. 5:22-CR-144-KKC-MAS<br><br><u>OPINION AND ORDER</u> |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on a Motion to Dismiss the Indictment by Defendant Joseph Slone. (DE 19.) Slone was indicted for possessing a firearm in violation of 18 U.S.C. § 922(g)(3), which prohibits firearm possession by unlawful users of any controlled substance, and 18 U.S.C. § 922(n), which prohibits the receipt of firearms by a person under indictment for a crime punishable by imprisonment for a term exceeding one year. (DE 1.) Slone now presents facial challenges to the constitutionality of § 922(g)(3) and § 922(n). The Court finds that these facial challenges fail and denies the motion to dismiss.

I

Slone argues that the Second Amendment requires his indictment be dismissed unless the government can show that § 922(g)(3) and § 922(n) are consistent with our Nation's historical tradition of firearm regulation. In doing so, he makes facial challenges to these two provisions. A facial challenge to a law's constitutionality is an effort "to invalidate the law in each of its applications, to take the law off the books completely." *Speet v. Schuette*, 726 F.3d 867, 871 (6th Cir. 2013) (quoting *Connection Distrib. Co. v. Holder*, 557

F.3d 321, 335 (6th Cir. 2009)). "In contrast to an as-applied challenge, which argues that a law is unconstitutional as enforced against the plaintiffs before the court, a facial challenge is not an attempt to invalidate the law in a discrete setting but an effort 'to leave nothing standing[.]'" *Id.* at 872 (internal citations omitted).

To succeed in a typical facial attack, a plaintiff must establish "that no set of circumstances exists under which [the statute] would be valid." *United States v. Stevens*, 559 U.S. 460, 473 (2010). The fact that a statute "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid[.]" *See United States v. Salerno*, 481 U.S. 739, 746 (1987) (explaining that the overbreadth doctrine has not been recognized outside the limited context of the First Amendment). The Supreme Court has repeatedly emphasized that facial challenges are disfavored. *Citizens United v. FEC*, 558 U.S. 310, 399 (2010).

## II

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, 554 U.S. 570 (2008) and in *McDonald v. Chicago*, 561 U.S. 742 (2010), the Supreme Court clarified that this protection guarantees "the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *New York State Rifle & Pistol Assoc. v. Bruen*, 142 S. Ct. 2111, 2122 (2022). Recently, the Court held that the Second Amendment also protects "an individual's right to carry a handgun for self-defense outside the home." *Id*. In so doing, the Court replaced the prevailing test for assessing laws that restrict the right to bear arms. *Id.* at 2125-26. Previously, federal courts applied a two-step approach that assessed history and then conducted means-end scrutiny. *Id.* at 2125. *Bruen* dispensed with the scrutiny

2

analysis and clarified that only the historical analysis is appropriate in Second Amendment challenges. *Id.* at 2126.

*Bruen* explained that the Second Amendment's meaning at the time that it was enacted defines its scope. *Id.* at 2126, 2137. Courts must first determine whether "the Second Amendment's plain text covers an individual's conduct . . . ." *Id.* If so, "the Constitution presumptively protects that conduct" and the Government must justify its regulation. *Id.* To do so, it "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified control.'" *Id.* at 2126. If the Government shows that the regulated conduct "falls beyond the Amendment's original scope, 'then the analysis can stop there; the regulated activity is categorically unprotected.'" *Id.* (quoting *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012)).

### A

*Bruen's* first step requires that the Court assess whether the Second Amendment's plain text applies to Slone. This analysis asks three questions: (1) whether Slone is one of the people whom the Second Amendment protects; (2) whether the weapon that Slone carried is in common use today; and (3) whether the plain text of the Second Amendment protects Slone's specific conduct. *See United States v. Goins*, 647 F. Supp. 3d 538, 544 (E.D. Ky. Dec. 21, 2022). The parties do not dispute that Slone's pistol is a weapon that is in common use and that the Second Amendment protects his proposed conduct. Rather, the Government contends that Slone is not one of the people to whom this right extends and that his conduct is not protected by the plain text of the Second Amendment.

3

The respondents in *Bruen* were "part of 'the people' whom the Second Amendment protects" because they were "ordinary, law-abiding, adult citizens . . . ." *Bruen*, 142 S. Ct. at 2134. The Government argues that Slone is not entitled to the Second Amendment's protections for law-abiding citizens because: (1) unlawful users and addicts of controlled substances are not law-abiding citizens; and (2) a person under indictment is not a law-abiding citizen. (DE 25 at 9, 11.) Slone argues the opposite—that "the people" is meant to "unambiguously refer to all members of the political community, not an unspecified subset." *United States v. Rahimi*, 61 F.4th 443, 451 (5th Cir. 2023).

"The Court [in *Bruen*] did not hold that it is necessary to be law abiding to assert Second Amendment rights." *Goins*, 647 F. Supp. 3d at 545. It is merely "sufficient to be law-abiding to qualify for Second Amendment protection." *Id.* Nevertheless, the Court acknowledges that the federal courts are divided on "whether the Second Amendment protects the right to bear arms for all, or rather, only the rights of law-abiding citizens." *United States v. Black*, No. 22-133-01, 2023 WL 122920, at *3 (W.D. La. Jan. 6, 2023). The Court will decline to decide whether the Second Amendment's protections belong to all people or to law-abiding citizens because, assuming the former to be true, Slone's facial challenges fail under the scrutiny of *Bruen's* second step of historical analysis.

**B**

Slone has failed to show that § 922(g)(3) is facially unconstitutional because the statute survives *Bruen's* second step. This law states that: "It shall be unlawful for any person who is *an unlawful user of or addicted* to any controlled substance . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(3) (emphasis added).

4

History supports Congress's decision to strip persons who are unlawful users or addicts of controlled substances of their right to bear arms.

History is "especially relevant in analyzing the Second Amendment because it is an inherited right." *Goins*, 647 F. Supp. 3d at 548. A court is not, however, "obligated to sift the historical materials for evidence to sustain [the Government's] statute." *Bruen*, 142 S. Ct. at 2150. That is the Government's burden. *Id*. The Court's role is to decide the case "based on the historical record compiled by the parties." *Stevens v. Mich. State Court Admin. Office*, No. 21-1727, 2022 WL 3500193, at *6 (6th Cir. 2022). Here, the Court finds that the Government has met its burden of demonstrating that § 922(g)(3) is consistent with this country's historical tradition of firearm regulation.

The Supreme Court explained that "[the] historical inquiry that courts must conduct will often involve reasoning by analogy" and "determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.'" *Bruen*, 142 S. Ct. at 2132. The laws need not be identical; they need only be a "representative historical *analogue*, not a historical *twin*." *Id*. at 2133. Two key metrics that guide a court in its determination are: "how and why the regulations burden a law-abiding citizen's right to armed self defense." *Id*. Further, the year of the adoption of the Bill of Rights is the most relevant time to consider in *Bruen's* historical analysis. *Id*. at 2137.

The Government argues that § 922(g)(3) is analogous to the disarmament of those deemed to be dangerous and untrustworthy, as well as the disarmament of the mentally ill. (DE 25 at 15, 24.) It first points to the Statute of Northampton, which "provided that, with some exceptions, Englishmen could not 'come before the King's Justices, or other of the King's Ministers doing their office, with force and arms, nor bring no force in affray of the

5

peace, nor to go nor ride armed by night nor by day, in Fairs, Markets, nor in the presence of the Justices or other Ministers, nor in no part elsewhere, upon pain to forfeit their Armour to the King, and their Bodies to Prison at the King's pleasure.'" 2 Edw. 3 c. 3 (1328). This statute was used to prosecute "the act of 'go[ing] armed to terrify the King's subjects[,]'" which was "a great offense at the common law[.]" *Bruin*, 142 S. Ct. at 2141 (quoting 3 Mod., at 118, 87 Eng. Rep., at 76). This statute remained in effect when the predecessor to the Second Amendment, the English Bill of Rights, was adopted. *Id.*

The Government also points to state laws in the late 18th century and early 19th century that "prohibit[ed] bearing arms in a way that spreads fear or terror among the people." *Id.* at 2144-45. "[F]ounding-era legislatures categorically disarmed groups whom they judged to be a threat to the public safety." *Kanter v. Barr*, 919 F.3d 437, 458 (7th Cir. 2019) (Barrett, J., dissenting). The common law at that time understood "that the sovereign could strip individuals of weapons if it deemed them violent or a threat to disturb the peace . . . [and t]he colonists inherited this understanding . . . ." *United States v. Goins*, 647 F. Supp. 3d 538, 553 (E.D. Ky. 2022). The Government argues that these statutes make clear that the "legislatures had the authority to disarm even non-violent people who they deemed not to be law-abiding or trustworthy." (DE 25 at 19.) It claims that those individuals unlawfully using or addicted to controlled substances could be disarmed under § 922(g)(3) because these state laws are relevantly similar regulations.

The Government presents other 19th-century state laws prohibiting the possession of firearms while intoxicated, which imposed criminal penalties on intoxicated individuals who possessed, used, or received firearms or pistols. (*Id.* at 21.) "[H]abitual drug abusers . . . are more likely to have difficulty exercising self-control, making it dangerous for them to possess deadly firearms." *United States v. Yancey*, 621 F.3d 681, 685 (7th Cir. 2010). Other courts have found that the "historical record shows a tradition of regulating firearm

6

possession by individuals using intoxicating substances which is analogous to § 922(g)(3)." *United States v. Posey*, No. 2:22-CR-83 JD, 2023 WL 1869095, at *9 (N.D. Ind. Feb. 9, 2023); *United States v. Daniels*, 610 F.Supp.3d 892, 895-97 (S.D. Miss. 2022); *United States v. Seiwert*, No. 20-CR-443, 2022 WL 4534605, at *2 (N.D. Ill. Sept. 28, 2022); *United States v. Lewis*, No. CR-22-395-F, 2023 WL 187582, at *4 (W.D. Okla. Jan. 13, 2023).

Further, the Supreme Court explained that its opinion in *Heller* should cast doubt on "presumptively lawful regulatory measures" such as "longstanding prohibitions on the possession of firearms by felons and the mentally ill[.]" *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). This position was reiterated in Justice Kavanaugh's concurring opinion in *Bruen. Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring).

The Government has shown that § 922(g)(3) is "relevantly similar" to historical regulations aimed at preventing potentially dangerous persons from possessing and using firearms, including the mentally ill and the intoxicated. Addiction to controlled substances has long been accepted as a mental illness. The Government correctly notes that the Supreme Court "has also analogized drug addiction and mental illness." (DE 25 at 26 (citing *Robinson v. California*, 370 U.S. 660, 667 (1962)).) Accordingly, the Court finds that the Government has met its burden of demonstrating that § 922(g)(3) is consistent with this country's historical tradition of firearm regulation.

Additionally, Slone's challenge does not meet the burdensome standard required by facial challenges. The Government correctly notes that Slone has mainly limited his argument against the constitutionality of § 922(g)(3) to "marijuana users." (DE 19-1 at 7, 10.) Slone fails to even address the "addiction" half of § 922(g)(3). The statute's prohibition applies to anyone "who is an unlawful user of or addicted to *any controlled substance* . . . ." 18 U.S.C. § 922(g)(3). Slone cannot limit his analysis to the conduct that he engaged in

because he is not presenting an as-applied challenge. "This matter can be considered by the Court at this point as the question is essentially one of law . . . and can be decided without factual findings." (DE 19-1 at 2.) To bring a successful facial challenge, Slone was required to show that the statute was unconstitutional in all of its application—including users and addicts of *any* controlled substance. He has failed to do so.

Further, Slone's own admission necessitates the failure of his facial challenge. He notes in his motion that the Fifth Circuit has concluded that "history and tradition may support some limits on an intoxicated person's right to carry a weapon." (*Id.* at 7 (quoting *United States v. Daniels*, 77 F.4th 337, 340 (5th Cir. 2023)).) The Court acknowledges that Slone presented this while arguing that disarming a sober citizen based exclusively on his past drug usage is not justified, but the admission is still there. It does, in fact, "undermine[] the entirety of [Slone's] facial challenge to § 922(g)(3)" because he was required to show that the statute is unconstitutional in all of its applications. Slone has functionally pointed to a set of circumstances—actively intoxicated users or addicts of controlled substances—under which our history and tradition could support limitations on the Second Amendment. Because Slone fails to show that § 922(g)(3) is unconstitutional in all of its applications, his facial challenge fails by necessity.

C

Likewise, Slone has failed to show that § 922(n) is facially unconstitutional because the statute survives *Bruen's* second step. This law states that: "It shall be unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce any firearm or ammunition or receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(n). Applying the same historical framework discussed above, the Court finds that the Government has met its burden of

demonstrating that § 922(n) is consistent with this country's historical tradition of firearm regulation.

The Government argues that § 922(n) is analogous to the disarmament of those deemed to be dangerous and untrustworthy, to surety laws, and to the pretrial detention of indicted defendants. It claims that disarming dangerous or untrustworthy persons supports § 922(n)'s prohibition on indicted defendants' receipt of firearms because it is "relevantly similar" under the "how and why" metrics provided by *Bruen*. (DE 25 at 20.) The "how" is similar because, like the historical analogue, § 922(n) uses an "objective criterion" to categorically restrict a specific group's gun rights. (*Id.*) The "why" is similar because § 922(n) seeks "to combat violence and promote public safety" by "keeping firearms out of the hands of categories of potentially irresponsible persons." (*Id.* (quoting *United States v. Laurent*, 861 F. Supp. 2d 71, 82 (E.D.N.Y. 2011).) Further, the Government claims the limit represents a permissible legislative judgment "that a person's status as an indicted felon warrants temporarily precluding the person from acquiring new firearms. (*Id.*)

The Government also argues that § 922(n) is analogous to mid-nineteenth-century surety laws. These laws supported the categorical restriction of gun rights of those accused but not convicted of wrongdoing. *United States v. Simien*, No. SA-22-CR-00379-JKP, 2023 WL 1980487, at *7 (W.D. Texas Feb. 10, 2023). In England, a "surety of the peace followed an accusation by someone that an individual would likely violate the law in the future." *Young v. Hawaii*, 992 F.3d 765, 791 n.12 (9th Cir. 2021) (en banc), vacated, 142 S. Ct. 2895 (2022); *see also Wrenn v. District of Columbia*, 864 F.3d 650, 661 (D.C. Cir. 2017) (explaining that English surety laws required a person "reasonably accused of posing a threat" "to post a bond to be used to cover any damage he might do" by carrying a firearm). The surety was "either a money payment or pledge by others 'in support of his future good

conduct.'" *Young*, 992 F.2d at 791 n.12. It was "intended merely for prevention, without any crime actually committed by the party, but arising only from a probable suspicion, that some crime [wa]s intended or likely to happen." 4 William Blackstone, Commentaries on the Laws of England 249 (1769). This practice carried over to the American colonies.

The Government argues that surety laws are relevantly similar to § 922(n) because: (1) they both temporarily burden Second Amendment rights of persons reasonably likely to breach the peace; and (2) they both do not ban publicly carrying firearms in its entirety. (DE 25 at 29.) "Section 922(n) does not prevent an individual from publicly carrying; it simply limits an individual's right to receive a firearm during the pendency of an indictment." *United States v. Kays*, 624 F. Supp. 3d 1262, 1268 (W.D. Okla. Aug. 29, 2022). This temporary prohibition against receipt disappears once the indictment is resolved, which the Government argues is analogous to an accused person posting a bond to overcome a surety law's restrictions. In other words, the burden only lasts "during the pendency of the indictment, a volatile period during which the stakes and stresses of pending criminal charges often motivate defendants to do violence to themselves or others." *United States v. Khatib*, No. 12-CR-190, 2012 WL 6086862 (E.D. Wis. Dec. 6, 2012).

Finally, the Government argues that § 922(n) is analogous to the pretrial detention of indicted defendants. It correctly points out that "[i]t has long been accepted that indicted defendants lack an absolute right of freedom pending trial." (DE 25 at 30; *see United States v. Slye*, No. 1:22-MJ-144, 2022 WL 9728732, at *2 (W.D. Penn. Oct. 6, 2022) ("The precedent for denial of pretrial release to those accused of crimes dates to the early days of the Republic—indeed to English common law.").) The Government argues that "[i]t follows that the power to detain a person necessarily encompasses the power to impose some lesser liberty restrictions such as prohibiting an indicted defendant from acquiring or receiving firearms. (*Id.* at 31.) Pretrial detention strips defendants of all Second Amendment rights

10

and severely restricts other "core constitutional rights," like freedom of speech, freedom of association, and reasonable privacy expectations, (*Id.* at 32; *Slye*, No. 1:22-MJ-144, at *2), so the Government claims that the narrower prohibition under § 922(n) should survive Slone's facial challenge.

The Court finds that the Government has provided sufficient historical analogues in the disarmament of those deemed dangerous or untrustworthy, surety laws, and pretrial detention to defeat Slone's facial challenge to § 922(n). It does not follow that defendants can be detained pending trial and stripped of core constitutional rights yet remain absolutely entitled to acquire or receive firearms. Under § 922(n), persons under indictment are subject to temporary burdens on their Second Amendment rights—akin to the temporary burdens that were taken on by those subject to surety laws. The Government was not required to produce a historical twin under the *Bruen* analysis, only a historical analogue. The Court finds that it has done just that. Accordingly, Slone's facial challenge to § 922(n) fails because he failed to show that the statute is unconstitutional in all of its applications.

### III

For the aforementioned reasons, the Court hereby ORDERS that Slone's motion to dismiss (DE 19) is DENIED.

This 20th day of November, 2023.



KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY