**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CRIMINAL ACTION NO. 22-CR-00144-KKC**

**UNITED STATES OF AMERICA**                                          **PLAINTIFF**

**V.**           **UNITED STATES'S SENTENCING MEMORANDUM**
           **REGARDING UNRESOLVED PSR OBJECTIONS**

**JOSEPH GAGE SLONE**                                          **DEFENDANT**

**\*   \*   \*   \*   \***

Comes the United States and submits the following sentencing memorandum regarding unresolved PSR objections ahead of Slone's sentencing. Because the PSR correctly assesses other incidents of Slone's consistent and frequent firearm possession as relevant conduct, any defense objection to the application of USSG §§ 2K2.1(b)(1)(A) and (b)(4)(A), involving the numbers of a firearms and a stolen firearm, respectively, should be overruled. In support, the United States provides the following:

**BACKGROUND**

On September 29, 2022, Lexington Police executed a search warrant on the premises located at 3500 Laredo Drive, Apartment 113, Lexington, Kentucky, in an effort to locate and arrest wanted subject, Joseph Gage Slone. [PSR ¶¶ 9-10] Slone had multiple outstanding warrants for violations of state law. *Id.* Upon entry, officers located Slone inside the apartment at which time he was placed under arrest. *Id.* at ¶ 10. A search was

conducted of the residence where officers located a Romarm/Cugir Micro Draco ("Draco") firearm inside the bedroom closet with a loaded thirty-round magazine. *Id.* Slone admitted to officers that he had purchased the Draco a month prior. [DE 30: Plea Agreement at PID 142].

In addition to the firearm, Slone also made several statements related to marijuana use and trafficking. Slone explained to officers that he was a "big weed fanatic" and smoked marijuana frequently. *Id.* Slone also admitted to selling marijuana and referenced a backpack located in the residence. *Id.* This backpack was located by officers hanging on the bathroom door and contained approximately 186 grams of marijuana, a small quantity of ammunition, digital scales, and plastic baggies. [PSR ¶ 10] Tools, various firearm parts, and a random assortment of ammunition were also found scattered throughout the apartment. Slone further acknowledged his affiliation with the Ambrose Gang in Lexington, stating that part of the purpose of the gang was protection, stealing vehicles, and smoking marijuana. Slone also stated that younger members of the gang had been involved in shootings and that Slone had attempted to quell this activity in the past.

In addition to Slone's admission regarding his marijuana use, officers had documented a history of Slone's interactions with police, frequently using or possessing marijuana and firearms. On February 9, 2022, Slone was arrested by Lexington Police on charges involving the possession of controlled substances and marijuana. [PSR ¶ 7] Officers had located Slone in the passenger seat of a vehicle after noting the odor of burnt marijuana emanating from within. [DE 16: FRE 404(b) Notice, PID 41] Under Slone's

seat, officers located a small quantity of marijuana. *Id.* On February 10, 2022, Slone was released on bond for these offenses but was subject to release conditions which included drug testing. On February 15, 2022, Slone self-reported to local pre-trial services that he was positive for marijuana. [PSR ¶ 47] He did so again on March 3 as well as submitted a positive screen for marijuana on March 22. *Id.* Beginning in June and into July, Slone failed to report for additional drug testing with local pre-trial services. *Id.* During his September 29 interview, Slone admitted that he had failed to appear in state court and his mandated drug testings due to a fear he would be arrested.

Additionally during this period of time, law enforcement came into contact with Slone on at least two other occasions: March 28 and June 9, 2022. On March 28, officers responded to the University of Kentucky Hospital where Slone had arrived after sustaining gunshot wounds to his head and arm. [DE 16 at PID 42] Slone explained to police that he was sitting in his vehicle smoking marijuana when two unknown subjects began shooting at his vehicle. *Id.* Slone explained that he exited his vehicle and began reaching for his own firearm that he normally kept between the seat and center console; however, the firearm was not there. After further questioning, Slone explained that even if he knew the identity of the subjects, he would not tell police as his "people would handle it."

On June 9, 2022, law enforcement conducted surveillance at 3500 Laredo Drive, Apartment 113 (the same apartment in which Slone was located in September). Officers observed Slone exit the residence through the sliding glass door of the apartment and

3

entering a silver Toyota Camry. The operator of the vehicle was observed retrieving a bag from the trunk of the vehicle and re-entering the driver's seat. Shortly thereafter, Slone exited the vehicle and re-entered apartment 113 with multiple items concealed under his shirt. Sometime later, Slone and his girlfriend, M.R., exited the apartment and left in a gold GMC Acadia. Officers initiated a traffic stop on the vehicle and conducted an interview with Slone at that time. [DE 16 at PID 42]

During the interview, Slone was told by officers about a probation violation summons pending for him. Slone believed that the summons may be due to a positive drug test he recently had. Slone also discussed the shooting from March 28, stating his belief that he was targeted due to his affiliation with the Ambrose Gang. Lastly, Slone, again, admitted to smoking marijuana regularly. *Id.* Slone and M.R. were released from the scene and were observed traveling back to apartment 113. As surveillance continued during the day, the gold Acadia was located at M.R.'s parents' residence where M.R. was observed outside. Back at apartment 113, officers observed Slone exit the apartment carrying a tan colored backpack and enter a white Accord.

The vehicle was followed to a local shopping area where law enforcement attempted a traffic stop. At this time, suspected automatic firearm conversion switches were thrown out the passenger side window of the Accord. [PSR ¶ 8] The vehicle then began fleeing from police. *Id.* During the pursuit, a tan and brown checkered backpack was thrown from the vehicle and recovered by police. Officers located four firearms inside the backpack.

4

As the vehicle continued fleeing from police, two individuals bailed out of the vehicle from the backseat and fled on foot. The vehicle continued to flee, eventually pulling into an apartment complex. A person matching Slone's description exited the vehicle carrying a second bag and continued to flee on foot behind the apartment complex. *Id.* While canvassing the area behind the complex, officers located a second tan backpack containing two containers with approximately 272 and 332 grams of marijuana respectively, along with a stolen Glock 9mm handgun. *Id.*

As part of the investigation into Slone, law enforcement also identified a social media account associated with Slone. [PSR ¶ 11] Multiple videos on the social media account reflected numerous firearms being possessed on a consistent basis between 2021 and 2022. *Id.* Slone or identifying features of Slone (such as his unique tattoos) can be observed in many of these videos. Of particular note, law enforcement observed a video of Slone, dated June 21, 2022, (*Id.* at USA 286) where Slone is observed displaying two firearms. A second video, dated May 31, 2022, (*Id.* at USA 195) also showed Slone firing a fully-automatic pistol. The videos also revealed additional evidence of marijuana possession and use by Slone. *Id.*

Given Slone's consistent documented history of marijuana use, Slone pled guilty to violating 18 U.S.C. § 922(g)(3), being an unlawful user of a controlled substance in possession of a firearm, based on the Draco seized during the investigation. Because Slone's consistent unlawful use of marijuana extended to at least February of 2022, the PSR attributed five firearms to Slone as part of the relevant conduct pursuant to USSG

5

§ 2K2.1(b)(1)(A). Due to the firearm recovered from the June 9 incident being stolen, the PSR also assessed Slone with a two-level enhancement for possession of a stolen firearm under USSG § 2K2.1(b)(4)(A). Slone has objected to both enhancements; however, because the PSR correctly attributes Slone's possession of other firearms as relevant conduct under § 1B1.3, any objection by the Defendant to these enhancements should be overruled.

## ARGUMENT

### I.      Objection #s 2, 3 and 5: Relevant Conduct- Firearm Guideline Enhancements

Relevant conduct consists of those acts and omissions caused by a defendant that "were part of the same course of conduct or common scheme or plan as the offense of conviction." USSG § 1B1.3(a)(2). Offenses qualify as "part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a[n]…ongoing series of offenses." *Id*., Application Note 5(B)(ii). Application of § 1B1.3(a)(2) does not require the defendant to have been convicted of other offenses and "sentencing courts may look to uncharged conduct, indeed even acquitted conduct, to enhance a sentence within the statutorily authorized range." *United States v. Rayyan*, 885 F.3d 436, 441 (6th Cir. 2018). In fact, "the contemporaneous, or nearly contemporaneous, possession of uncharged firearms is…relevant conduct in the context of a felon-in-possession prosecution." *United States v. Phillips*, 516 F.3d 470, 483 (6th Cir. 2008).

6

In determining whether a defendant's conduct qualifies as the "same course of conduct," the Court considers such factors as "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses" as well as the "nature of the offenses." § 1B1.3, Application Note 5(B)(ii); *see also United States v. Powell*, 516 F.3d 479, 483 (6th Cir. 2008). When balancing these factors, the Guidelines provide a sliding scale approach such that "when one of these factors is absent, a stronger presence of at least one of the other factors is required." *United States v. Hill*, 79 F.3d 1477, 1482 (6th Cir. 1996).

"When considering the similarity factor, the conduct should not be considered at a level of generality that would render worthless the relevant conduct analysis." *Hill* at 1483. With regard to regularity, because all cases involving relevant conduct determination must involve at least one other instance of conduct, "regularity is completely absent where the government shows only one other offense." *United States v. Amerson*, 886 F.3d 568, 574 (6th Cir. 2018). However, "a lapse of time between prior conduct and the offense of conviction does not necessarily indicate a defendant abandoned a particular course of conduct; rather, such a lapse may result when participants are forced to put the venture 'on hold.'" *Hill* at 1483. Still, a finding of similarity of offenses combined with regularity beyond a single instance makes determining whether multiple events constitute the "same course conduct" an "easy" decision. *Amerson* at 574. "[I]f there are only two instances of conduct, and thus no

regularity, there must be strong similarity and close temporal proximity to make up for it." *United States v. Bowens*, 938 F.3d 790, 800 (6th Cir. 2019).

The temporal scope of firearm possessions is expansive, with courts "generally uph[olding] the relevant conduct designation where the offenses were within a nine-month period." *Id*. at 463. However, the nine-month period is not a bright line as courts have found temporal proximity when there has been as little as two months (*see United States v. Gales*, 137 Fed.Appx. 875 (6th Cir. 2005) and as much as years (*see Phillips*) between separate incidents. [T]he Sentencing Guidelines impose no precise amount of time after which prior conduct is too remote to be considered 'relevant conduct' under section 1B1.3." *Hill* at 1484 (6th Cir. 1996).

All three factors are present in Slone's case, supporting both §§ 2K2.1(b)(1)(A) and (b)(4)(A) enhancements.

For Slone, the period of relevant conduct encompasses the time between approximately February and September of 2022 where there is significant evidence and documentation of Slone's marijuana use and firearm possession. Slone stands before the Court convicted of violating 18 U.S.C. § 922(g)(3), that is, being an unlawful user in possession of a firearm. Specifically, Slone's prohibition was based on his marijuana use, as he described himself as a "big weed fanatic" while in possession of the Draco. However, a defendant's status as a "user" is not limited to the instance of firearm possession. "Rather, the defendant must have been engaged in use that was sufficiently consistent and prolonged as to constitute a pattern of regular and repeated use of a

controlled substance." *United States v. Burchard*, 580 F.3d 341, 352 (6th Cir. 2009). "The government need not show that defendant used a controlled substance at the precise time he possessed a firearm. It must, however, establish that he was engaged in a pattern of regular and repeated use." *Id*. Slone's well-documented history, including possession of marijuana, admissions of use, and positive drug tests, over the course of six months established the "pattern of regular and repeated use" to establish him as a user of marijuana during the entirety of that period of time. This would further establish any possession of firearms during this same period as unlawful and nearly identical to his offense of conviction.

In *Phillips*, 516 F.3d 470 (6th Cir. 2008), the Sixth Circuit applied a four level enhancement for the possession of eight to twenty-four firearms under § 2K21.(b)(1). In May of 2004, Phillips was charged with violating 18 U.S.C. § 922(g)(1). Additional firearms were assessed against Phillips as part of the relevant conduct determination based on two uncharged incidents. The first occurred in August of 2002, prior to the defendant's offense of conviction, and the second occurred in March of 2006, well after the incident of conviction. The Sixth Circuit found that "the degree of similarity" was "strong" between the incidents as the defendant's possession of firearms as a felon was "identical to the offense of conviction." *Id*. at 485.

Similarly, in *Bowens*, 938 F.3d 790 (6th Cir. 2019), the Sixth Circuit addressed a similar issue based on a conviction under § 922(g)(3). In May of 2017, Bowens was arrested after officers located a marijuana blunt and two firearms in a vehicle occupied by

9

Bowens and a second subject. The district court assessed a two-level enhancement against Bowens for the possession of a third firearm that was recovered in Bowens's bedroom at his mother's home four months earlier. Unlike *Phillips*, however, the Sixth Circuit vacated Bowens sentence, determining that the enhancement should not have applied. With regard to similarity, the Sixth Circuit determined that there was nothing similar between the two incidents of firearm possession "other than the general nature of the offense," noting that there was no evidence of marijuana use or possession with regard to the earlier incident. *Bowens* at 800.

Unlike *Bowens*, Slone's possession of firearms on May 31, June 9, June 21, and September 29, 2022, all occurred during a period of time where Slone was consistently using marijuana. For example, on February 9, 2022, Slone was arrested while in possession of marijuana; on February 15, 2022, Slone self-admitted to using marijuana; on March 3, 2022, Slone, again, self-admitted to using marijuana; on March 22, 2022, Slone tested positive for marijuana; on March 28, 2022, Slone admitted to smoking marijuana while seated in his vehicle; on June 9, 2022, Slone admitted to smoking marijuana consistently and, later, discarded a backpack with a large quantity of marijuana; and on September 29, 2022, Slone was found in possession of another large quantity of marijuana after admitting to consistent use. On or around each of these dates there existed consistent marijuana use making Slone's incident more closely resemble the situation in *Phillips* rather than *Bowens*.

Further, unlike *Bowens*, *Amerson*, *Hill*, and, to some extent, even *Phillips*, Slone's periods of firearm possession provide a degree of regularity that dwarf the incidents at issue in those cases. *Bowens*, *Amerson*, and *Hill* only provided their respective sentencing courts with one example of another incident beyond the offense of conviction for relevant conduct consideration. This was a significant factor in finding a general weakness of regularity. In other words, "[t]he government proved the bare minimum – only one other offense" in those cases. *Amerson* at 574. In *Phillips*, however, the Sixth Circuit gave weight to the fact that there were two incidents that occurred before and after the charged conduct in finding that the defendant carried firearms regularly. *Id*. at 484-485. Slone's case provides at least four other incidents of firearm possession, not counting his admission to reaching for his firearm during the March 28 shooting incident, over the course of five to six months.

Lastly, because Slone's incidents of firearm possession occurred consistently over a six-month period, there is greater temporal proximity to the offense of conviction than even the year gaps in *Phillips*. In fact, Slone's "willingness to engage in the same type of criminal activity" in a six-month period "cuts in favor of a course-of-conduct finding." *Amerson* at 574. In *Bowens*, the Sixth Circuit noted that had there been "stronger evidence of regularity or similarity, the four-month gap would not [have been] a roadblock for finding relevant conduct." *Bowens* at 800. Slone's case does not lack strong evidence of regularity or similarity, nor is there any actual gap between his firearm

11

possessions. The timing factor under § 1B1.3 weighs significantly in favor of a "course of conduct" finding.

While § 1B1.3 provides a sliding scale to evaluate the three factors of similarity, regularity, and temporal proximity, this approach is only relevant when one factor is significantly weaker than the other. In Slone's case, all three factors are present and strong supporting a determination that these other incidents of firearm possession recent to Slone's offense of conviction are part of the same course of conduct and part of an ongoing series of offenses. As such, they should be properly considered as part of the relevant conduct under § 1B1.3. In addition, because § 1B1.3(a) provides that "specific offense characteristics" are to be based on the relevant conduct determination, the PSR correctly attributes a two-level enhancement against Slone under § 2K2.1(b)(1)(A) as well as the stolen firearm enhancement for the June 9 incident under § 2K2.1(b)(4)(A).

## II.   <u>Miscellaneous Objections</u>

### a.  <u>Objection # 1: Information to be Considered by the Court</u>

As part of his substantive objections, the Defendant also objected to the inclusion of information contained in the PSR. This objection is primarily focused on videos attributed to Slone reflecting firearm possession, many of which are outside the relevant conduct period. The information is properly included within the PSR for the Court's consideration in determining an appropriate sentence in this matter.

Pursuant to USSG § 1B1.4, "[i]n determining the sentence to impose within the guideline range…the court may consider, without limitation, any information concerning

the background, character and conduct of the defendant." *See also* 18 U.S.C. § 3661. This is separate from determining the guideline range. Similarly, under 18 U.S.C. § 3553(a), the Court considers a defendant's history and characteristics to determine a sentence that is sufficient but not greater than necessary. Information pertaining to Slone's involvement in other criminal activity, even if outside the relevant conduct period for guideline calculations, is relevant to the Court's overall sentencing determination. The only limitation on the information is that it "has sufficient indicia of reliability to support its probable accuracy." USSG § 6A1.3. Admittedly, the United States anticipates introducing evidence at Slone's sentencing to further resolve this objection.

### b. Objection # 2: June 9, 2022 Incident

In addition to arguing that the June 9, 2022, incident should not be counted as part of the relevant conduct determination, Slone objects to the factual determination that he was involved in this incident. Because this is a factual objection, the United States anticipates meeting its burden of proof through testimony and evidence during Slone's sentencing hearing pursuant to USSG § 6A1.3.

### CONCLUSION

While evidence of the various incidents described in the PSR will require proof through witness testimony and evidence, the United States submits that the evidence will support a finding that these incidents constitute relevant conduct under the United States Sentencing Guidelines. Therefore, at the conclusion of the proof, Slone's objections to the application of §§ 2K2.1(b)(1)(A) and (b)(4)(A) should be overruled.

13

Respectfully submitted,

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

By: /s/ Francisco J. Villalobos II

Francisco J. Villalobos II
Assistant United States Attorney
260 W. Vine Street, Suite 300
Lexington, Kentucky 40507-1612
(859) 685-4896
Francisco.Villalobos@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2024, I electronically filed this document with the clerk of the court through the CM/ECF system, which will send the notice of electronic filing to all counsel of record.

/s/ Francisco J. Villalobos II

Francisco J. Villalobos II
Assistant United States Attorney

14